UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VIOLETTA ROSALES,

Plaintiff,

v.

ELEVATE PFS HOLDINGS, INC.,

Defendant.

Case No. 26-cv-01728-HSG

**ORDER GRANTING MOTION TO REMAND**

Re: Dkt. No. 11

Pending before the Court is Plaintiff's motion to remand.  Dkt. No. 11 ("Mot."); Dkt. No. 12 ("Opp."); Dkt. No. 13 ("Reply").  The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons discussed below, the Court **GRANTS** Plaintiff's motion to remand.

## I.   BACKGROUND

Plaintiff Violetta Rosales filed this putative class action against Defendant Elevate PFS Holdings, Inc. in Alameda County Superior Court on January 22, 2026.  *See* Dkt. No 1-1, Ex. A ("Compl.").  Plaintiff alleges that Defendant "engaged in a pattern of wage and hour violations," and brings claims for (1) failure to pay minimum and overtime wages; (2) failure to provide meal periods; (3) failure to permit rest periods; (4) failure to provide accurate itemized wage statements; (5) failure to pay all wages due during employment and upon separation of employment; and (6) unfair and unlawful business practices.  *Id.* ¶¶ 2, 32–83.

Defendant removed to federal court in February 2026.  *See* Dkt. No. 1 ("Notice of Removal").  Defendant cites the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as the basis for this Court's jurisdiction, and argues that CAFA jurisdiction is present because, based on the allegations, (1) the proposed class is larger than 100 members (and actually numbers at least

United States District Court
Northern District of California

326 class members); (2) minimal diversity is present because Plaintiff is a California citizen and Defendant is not; and (3) the amount in controversy exceeds $5,000,000 (and is estimated to be $15,227,779.60).  Notice of Removal ¶¶ 14–50.

## II.    LEGAL STANDARD

A defendant may remove any civil action to federal court where the district court would have original jurisdiction over the action.  28 U.S.C. § 1441; *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  To do so, a party seeking removal must file a notice of removal within 30 days of receiving the initial pleading or within 30 days of receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(1), (3).  The notice must contain a "short and plain statement of the grounds for removal."  *Id*. § 1446(a); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015).

CAFA vests the district courts with original jurisdiction over civil actions in which the amount in controversy exceeds $5,000,000, there is minimal diversity of citizenship between the parties, and the action involves at least 100 class members.  28 U.S.C. § 1332(d).  Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000."  *Id*. § 1332(d)(6).  The removing party bears the burden of establishing removal jurisdiction, even in a case removed pursuant to CAFA. *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683–85 (9th Cir. 2006) ("[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction.").

A plaintiff may seek to remand a case to the state court from which it was removed if the district court lacks jurisdiction or if there was a defect in the removal procedure.  *See* 28 U.S.C. § 1447(c).  However, there is no anti-removal presumption in cases invoking CAFA.  *Dart Cherokee Basin Operating, Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

## III.    DISCUSSION

Plaintiff argues that Defendant failed to establish that amount in controversy exceeds $5,000,000.  Mot. at 5.  Though Defendant estimates the amount in controversy to be

United States District Court
Northern District of California

2

$15,227,779.60, including attorneys' fees, Notice of Removal ¶ 50, Plaintiff argues that "Defendant's amount in controversy consists of wholly unsubstantiated and plainly unreasonable assumptions and violation rates [that] lack support in evidence or in the Complaint," Mot. at 3.

The Ninth Circuit has "defined the amount in controversy as the amount at stake in the underlying litigation." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (quotation omitted). In other words, the amount in controversy "is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (emphasis in original); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (explaining that the amount in controversy is the amount "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover [it]").

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89; *see also Arias*, 936 F.3d at 925 (affirming that "a notice of removal 'need not contain evidentiary submissions'" (quotation omitted)). If the plaintiff contests those allegations in a motion to remand, however, "the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart*, 574 U.S. at 88. The preponderance of the evidence standard means the "defendant must provide evidence establishing that it is 'more likely than not'" that the amount in controversy exceeds $5,000,000. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (quotation omitted). In assessing whether the amount in controversy is "more likely than not" satisfied, courts may consider not only the facts alleged in the complaint, taken as true for purposes of calculating the amount, but also "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (quotation omitted).

While "[a] defendant need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty," *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir.

2020), a defendant may not establish federal jurisdiction "by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197. Further, where a defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, "those assumptions cannot be pulled from thin air [and] need some reasonable ground underlying them." *Id.* at 1199. Those assumptions "can be founded on the allegations of the complaint and do not necessarily need to be supported by evidence." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (quotation omitted). And "an assumption is not unreasonable simply because another equally valid assumption may exist." *Id.* at 809.

The parties do not dispute that Plaintiff's complaint does not specify an amount in controversy on its face, so the Court considers each of the estimates provided in Defendant's notice of removal.

### a. Unpaid Wages

For Plaintiff's first cause of action, Defendant estimates that the amount in controversy is $2,914,099.20 for failure to pay minimum wages and $874,229.76 for failure to pay overtime wages. Notice of Removal ¶¶ 35–39. In its notice of removal, Defendant assumed that (1) each employee "worked five hours of straight time for which they were not paid per pay period"; (2) "there are at least 326 putative class members who were non-exempt, hourly employees and who collectively worked a total of approximately 23,808 work weeks from January 22, 2022, to present, equating to approximately 11,904 combined pay periods"; and (3) "Defendant's non-exempt hourly employees generally earned an average of approximately $24.48 per hour during the class period." *Id.* ¶¶ 33–34, 36. Defendant also assumed that each employee worked one hour of unpaid overtime per pay period and should have been paid one-and-a-half times the regular rate of pay for each such hour. *Id.* at 38–39.

First, as Plaintiff notes, Defendant assumed five hours of unpaid wages and one hour of unpaid overtime *per pay period*, but then multiplied those values by the number of work weeks. *See* Mot. at 6. Under its stated assumptions, the amount in controversy should have been $1,457,049.60 for failure to pay minimum wages (5 hours per pay period * 11,904 pay periods * $24.48 per hour) and $437,114.88 for failure to pay overtime wages (1 hour per pay period *

11,904 pay periods *$24.48 per hour * 1.5 overtime multiplier).[1]

Second, Plaintiff argues that Defendant improperly assumed that class members were not paid the "entire average hourly rate of pay," despite the fact that Plaintiff's claims allege that Defendant failed to pay some non-zero difference between the amount paid and "the correct regular rate of pay." Mot. at 6. Plaintiff alleges that "[d]uring the relevant time period, Defendant[] failed to pay for all hours worked at the correct rate of pay." Compl. ¶ 38; *see also id.* ¶ 40 ("During the relevant time period, Defendant[] regularly failed to pay all wages to Plaintiff and Class Members for all hours worked in violation of the Labor Code and the applicable IWC Wage Order."). Plaintiff specifically alleges that "Defendant[] failed to pay . . . at least the minimum wage and overtime wage for all hours worked *due to Defendant['s] policy and practice of failing to incorporate non-discretionary bonuses in Plaintiff's and Class Members' regular rate of pay*. As a result, Defendant[] failed to pay Plaintiff and Class Members for all minimum and overtime wages in violation of the Labor Code and applicable IWC Wage Order." *Id.* ¶ 25 (emphasis added).

While these allegations are relatively sparse, the Court agrees that the obvious implication of the complaint is that class members were paid some but not all of the wages that they were owed. As a result, Defendant has put forth an assumption that does not match Plaintiff's underlying theory. *Cf. Petersen v. Gold Bond Bldg. Prods., LLC*, No. 24-CV-00617-TSH, 2024 WL 3859801, at *3–*4 (N.D. Cal. Aug. 16, 2024) (finding a "fundamental mismatch between the type of . . . violation Plaintiff alleges and the type of violation Defendant presumes" where "Plaintiff repeatedly alleges that Defendant failed to properly calculate the hourly overtime rate of pay by failing to include all forms of compensation in the 'regular rate of pay'").

When challenged on this point, Defendant does not explain how its assumptions could be

---

[1] Defendant argues that "[w]age-and-hour claims . . . are inherently tied to hours worked, which are most appropriately measured on a workweek basis." Opp. at 10. This may be true, and it is also true that a calculation that relied on assumptions tied to work weeks could have been reasonable. But Defendant's stated assumptions were tied to pay periods—which is not inherently unreasonable—and Defendant has not provided any real explanation for why the Court should prefer "another equally valid assumption" over its stated assumptions. *See Perez*, 131 F.4th at 809.

consistent with Plaintiff's underpayment theory or provide any evidence supporting its assumptions. Instead, Defendant claims that Plaintiff asserts "sweeping allegations that she and all class members were not paid for all hours worked." Opp. at 10. To the extent this assumes that Plaintiff is alleging that she and class members were *never* paid, that assumption is unreasonable, unsupported by the complaint, and overlooks allegations such as those describing the failure to incorporate non-discretionary bonuses. In addition, Defendant repeatedly suggests that Plaintiff had to introduce evidence to challenge its jurisdictional calculations. *See, e.g.*, *id.* at 10 (noting that "Plaintiff offers no competing assumption and no evidence suggesting a lower violation rate"). But "[a] factual attack . . . need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Harris*, 980 F.3d at 700. Plaintiff has done exactly that.

"Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022). Because Defendant does not engage with the substance of Plaintiff's arguments and does not provide any additional evidence or justification for assumptions that are inconsistent with the theory of the complaint, the Court has no "better alternative" that it can apply. As a result, the Court concludes that Defendant has not demonstrated the amount in controversy for its unpaid wages claim by a preponderance of the evidence. *See Rodriguez v. Novolex Holdings, LLC*, No. 2:26-CV-00068-MEMF-SK, 2026 WL 981217, at *6 (C.D. Cal. Apr. 9, 2026) (applying *Jauregui* and concluding defendant had not met its burden); *see also Woods v. C.H. Robinson Co., Inc.*, No. 25-CV-00294-SK, 2025 WL 914762, at *3–*4 (N.D. Cal. Mar. 26, 2025) (using $0 amount in controversy where defendant unreasonably assumed unpaid overtime, instead of *underpaid* overtime in case involving similar allegations of failure to include, for example, non-discretionary bonuses).[2]

---

[2] As discussed, the Court has no basis to determine a better amount in controversy that is consistent with Plaintiff's underpayment theory. However, even if Defendant had been able to

Finally, Plaintiff argues that "there is no evidence of the total number of shifts that Plaintiff or the class members worked that were long enough to entitle any of them to overtime wages." Mot. at 7. Defendant was allegedly required to compensate class members for all overtime worked "at 1 ½ times their regular rate of pay for all hours worked in excess of 8 hours per workday [and] 40 hours per week." Compl. ¶ 37. "Yet, when challenged, Defendant[] provide[s] no evidence to support that any employee worked more than eight hours a day or more than forty hours a week to be eligible for even one violation per pay period." *Marshall v. Tailored Shared Servs., LLC*, No. 2:24-CV-03446-ODW (MRWX), 2024 WL 4700606, at *3 (C.D. Cal. Nov. 6, 2024). Nor do any allegations in the complaint suggest that "putative class members were 'regularly' required to perform 'work duties off-the-clock.'" *See Seijas v. Jackson Lab'y*, No. 2:24-CV-03423-DJC-AC, 2026 WL 203257, at *5 (E.D. Cal. Jan. 27, 2026). This further demonstrates the unreasonableness of Defendant's overtime assumptions. And, unlike in comparable cases, Defendant has not put forth any evidence from which the Court can craft a better assumption. *Cf. Agdeppa v. C & J Clark Retail, Inc.*, No. 25-CV-10862-JSC, 2026 WL 874686, at *6 (N.D. Cal. Mar. 30, 2026) (applying 50% of the defendants' calculated violation rate for unpaid overtime claim where they had introduced evidence that average shift length was 6.5 hours).

"A defendant need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty. Nonetheless, the burden of demonstrating the reasonableness of the assumptions on which the calculation of the amount in controversy was based remain[s]" with Defendant. *Harris*, 980 F.3d at 701. Defendant consistently failed to engage with Plaintiff's arguments in its opposition, never advancing any serious justification or supporting evidence for its assumptions. Defendant's choice here leaves the Court without any better alternatives that it

---

explain how its assumptions are consistent with Plaintiff's underpayment theory, the Court would have reduced the amount in controversy for the underpaid minimum wages claim to a more reasonable violation rate, such as one violation per pay period or one violation per work week. *Cf. Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 911–12 (N.D. Cal. 2016) (finding assumption of one violation per week was reasonable where plaintiff alleged "policy or practice" of meal and rest break violations). Under either alternate assumption, the ultimate amount in controversy would still have been below $5,000,000 given the Court's remaining analysis.

United States District Court
Northern District of California

can reasonably apply.  As a result, Defendant has not met its burden in establishing the amount in controversy as to Plaintiff's first cause of action.

### b.  Unpaid Meal Periods and Rest Periods

For Plaintiff's second and third causes of action,  Defendant estimates that the amount in controversy is $2,895,910.56 for failure to provide meal periods and $2,895,910.56 for failure to provide rest periods.  Notice of Removal ¶¶ 40–43.  In its notice of removal, Defendant assumed that there was one applicable violation per shift (1 violation per shift * $24.48 per violation * 118,297 shifts).  *Id.*  Plaintiff objects both to the 100% violation rate and Defendant's failure to "introduce any evidence of the . . . total number of shifts that were long enough to entitle class members to meal periods or rest periods" (five and four hours, respectively).  Mot. at 7–8.

The Court agrees that Defendant's assumptions are unreasonable.  Defendant introduced evidence that the class members "collectively worked approximately 118,297 shifts during the Class Period."  Dkt. No. 1-2 ¶ 10.  But Defendant's declaration is silent on how long these shifts were, and Defendant does not introduce any evidence clarifying this in its opposition.  *Cf. Lopez v. Advanced Drainage Sys., Inc.*, 777 F. Supp. 3d 1100, 1108 (N.D. Cal. 2025) ("The problem with [this] calculation is that an employee's entitlement to meal and rest breaks depends on the length of an employee's shift, and [defendant's] calculations nowhere take shift length into account.");  *Harris*, 980 F.3d at 701 (finding meal and rest period assumptions unreasonable where defendant failed to provide any evidence to support its assumption that class members "worked shifts long enough to qualify for meal or rest periods");  *Benitez v. Hyatt Corp.*, 722 F. Supp. 3d 1094, 1101 (S.D. Cal. 2024) (rejecting rest and meal period assumptions where defendant "offered no evidence regarding the average shift length" and nothing in the complaint clarified the length).

Defendant asserts that it "relied on data regarding total shifts worked during the class period to estimate exposure," but this misses the point about eligible shift lengths.  *See* Opp. at 12.  Defendant also argues again that "Plaintiff . . . offers no alternative calculation, no competing estimate of shifts, and no evidence suggesting that the number used by Defendant is inaccurate."  *Id.*  Defendant says that "once Defendant has provided a reasonable estimate grounded in the available data, Plaintiff must do more than criticize the inputs."  *Id.*  Of course, the problem here is

that Defendant has *not* provided a reasonable estimate grounded in the available data, since there is no indication that these shifts were for the relevant length. Moreover, nothing in the complaint mentions the average length of a shift or otherwise supports the reasonableness of Defendant's calculations. *Cf. Perez*, 131 F.4th at 809 (noting that "if a violation rate cannot be justified by the allegations in the compl[ai]nt, it must be justified by something else"). The "failure to support . . . removal of this case with" evidence of shift length, "as well as [Defendant's] failure to explain why its assumed violation rate is supported by the allegations of the complaint, renders its assumptions regarding the total amount in controversy on the meal and rest period claims unreasonable." *Lopez*, 777 F. Supp. 3d at 1108. The Court has no basis to determine what a better assumption would have been here, so Defendant has not met its burden in establishing the amount in controversy as to Plaintiff's second and third causes of action.

### c. Remaining Claims

Defendant estimates that the amount in controversy for the fourth and fifth causes of action are $1,304,000 and $1,298,073.60, respectively. Notice of Removal ¶¶ 46, 48. Even if Defendant's underlying assumptions for those causes of action are reasonable and Defendant is correct that "an additional 25% for attorneys['] fees is warranted," *id.* ¶ 50, the remaining amount in controversy would be below the $5,000,000 minimum. Accordingly, the Court finds that Defendant has not adequately established the amount-in-controversy requirement, and thus **GRANTS** Plaintiff's motion.[3]

## IV.    CONCLUSION

The Court **GRANTS** Plaintiff's motion to remand, Dkt. No. 11. The Clerk is directed to

---

[3] Defendant also argues that "Plaintiff's challenge to the amount in controversy is untimely and should be disregarded," contending that she was required to file her motion to remand within 30 days of removal. Opp. at 6–7. "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). While it is true that Plaintiff filed her motion to remand more than 30 days after Defendant filed its notice of removal, Plaintiff is plainly arguing that the Court lacks jurisdiction. *See* Mot. at 5 ("Here, based on the lack of evidence and the allegations in Plaintiff's Complaint, the amount in controversy is well below the jurisdictional threshold."). The Court disagrees that Plaintiff's challenges can fairly be framed as procedural. *Cf. Chavoya v. Merrill Gardens L.L.C.*, No. 1:24-CV-00268-KES-BAM, 2024 WL 3219724, at *3 (E.D. Cal. June 28, 2024) (rejecting the same argument). As a result, the 30-day deadline does not apply.

remand this case to the Superior Court of California for the County of Alameda and close the file.

**IT IS SO ORDERED.**

Dated:  June 23, 2026

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge